# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

WOODROW GENE STICK,              )
                                 )
                  Petitioner,    )
                                 )
            v.                   )          No. CIV-07-50-FHS
                                 )
RANDALL WORKMAN,                 )
                                 )
                  Respondent.    )

## ORDER

Before the court for its consideration is the Petitioner's writ for habeas corpus relief.

Petitioner, Woodrow Stick, is an inmate in the custody of the Oklahoma Department of Corrections-Lexington Assessment and Reception Center. He has filed this Petition seeking federal habeas corpus relief. He appears pro se. Petitioner is currently incarcerated pursuant to a judgment and a sentence entered after a jury trial in the District Court of Seminole County, Case No. CF-2004-66 on the charge of First Degree Manslaughter. Petitioner filed an appeal to the Oklahoma Court of Criminal Appeals. The Oklahoma Court of Criminal Appeals affirmed Petitioner's conviction on November 22, 2005. Petitioner was represented by counsel on appeal. Petitioner filed an Application for Post-Conviction relief on May 31, 2006. The trial court denied Petitioner's application. Petitioner appealed the denial of his Application for Post-Conviction Relief to the Oklahoma Court of Criminal Appeals. The Oklahoma Court of Criminal Appeals affirmed the denial of the Post-Conviction Relief.

1

Petitioner asserts the following grounds for relief:

The state failed to prove beyond a reasonable doubt that Mr. Stick was not acting in self-defense; the trial court erred in allowing admission of the pen packet during the second stage of trial; Defense counsel rendered ineffective assistance in failing to object to the introduction of the pen packet; Mr. Stick's forty year sentence is excessive and warrants modification given the facts in his case and the improper evidence introduced during second stage of trial; the trial court improperly responded to a question posed to the court by the jury during first stage deliberations; the trial court erred in allowing *witness* Stacy Morton to testify at trial because she was not included on the state's final list of witnesses; the jurors were not questioned during voir dire regarding whether anyone knew *witness* Ms. Morton; and Petitioner claims the jury should have been instructed or considered instructing on heat of passion or adequate provocation.

Respondent submitted the following records for review:

(1) Opening Brief of Appellant filed July 14, 2005.
(2) Brief of Appellee filed September 1, 2005.
(3) Summary Opinion filed November 22, 2005.
(4) Oklahoma District Court Records for Seminole County for case titled <u>State of Oklahoma vs. Gene Woodrow Stick</u>.
(5) Petitioner's Brief in Support of Petition in Error to the Oklahoma Court of Criminal Appeals filed October 19, 2006.
(6) Order Affirming Denial of Post-Conviction Relief filed January 16, 2007.
(7) Transcript of Jury Trial dated November 15, 2004.
(8) Select Jury Instruction #36

## I.  Sufficiency of the Evidence as to Petitioner's Self-Defense Claim

Under the AEDPA, there are two grounds upon which a federal court may grant habeas relief:

(1) the state court reached a decision that was

contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States, or (2) the state court reached a decision that was based on an unreasonable determination of the facts in light of the evidence.

Petitioner alleges in Ground I the State failed to prove by sufficient evidence that he did not act in self defense when he killed Mr. Deathrage. He raised this same claim to the Oklahoma Court of Criminal Appeals which found his failure to act in self-defense was supported by sufficient evidence.

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." Case v. Mondagon, 887 F. 2d 1388, 1392 (10th Cir. 1989), cert. denied, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court has repeatedly emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." Wright v. West, 505 U.S. 277, 296 (1992) (citing Jackson, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record-- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason."

Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing United States v. Edmondson, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." Beachum v. Tansy, 903 F.2d 1321, 1332 (10th Cir.), cert. denied, 498 U.S. 904 (1990) (citing United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir. 1987)).

To determine whether there was sufficient evidence presented at trial to sustain Petitioner's conviction, the court first must look to Oklahoma law for the elements required for self-defense. Pursuant to Oklahoma law, when evidence is presented which warrants an instruction on self-defense, the jury must be instructed the state has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. Perez v. State, 798 P.2d 639, 640-641 (Okla. Crim. App. 1990). Self-defense is not available to the aggressor. Le v. State, 947 P.2d 535, 547 (Okla. Crim. App. 1997). The Oklahoma Court of Criminal Appeals holds that even if a person is the aggressor, he can lose that status by clearly withdrawing from the fight. If a party who was the attacker withdraws and the other party pursues more than is necessary to ensure his safety, the pursing party can take on the status of attacker and lose the right of self-defense. Allen v. State, 871 P.2d 79, 92 (Okla. Crim. App. 1994). In Bechtel v. State, 840 P.2d 1,6 (Okla. Crim. App. 1992), the Oklahoma Court of Criminal Appeals held as follows regarding self-defense:

> Fear alone never justifies one person to take the life of another. Such fear must have been induced by some overt gesture, or word spoken by the deceased at the time the homicide occurred which would form a reasonable ground for the belief that the accused is about to suffer death or great bodily harm.

The only evidence the jury heard on self-defense was Petitioner's statement to Agent Perkinson and Mr. Seckinger's testimony. Mr. Seckinger was an eye witness to the murder. Mr. Seckinger gave a statement to Officer Amos which conflicted with his trial testimony. Mr. Seckinger told Officer Amos shortly after the stabbing that Kevin Deatherage was backing away from the Petitioner by the front door when Petitioner stabbed him. (Tr. I 170). However, when Mr. Seckinger testified at trial he stated the victim was coming toward the Petitioner at the time the Petitioner stabbed him. Mr. Seckinger also testified at trial that the victim did not hit him and that he did not believe the victim was going to harm him. (Tr. I 207-208).

Petitioner's version of the events in question was different than Mr. Seckinger's statement to Officer Amos and his testimony at trial. Petitioner told Agent Perkinson in his statement that Kevin Deatherage shoved Mr. Seckinger and then came toward the Petitioner into the living room and he held the knife out in front of him and the Petitioner pushed on the knife. (Tr. II 98-99). If the victim was retreating from the Petitioner, the stabbing could not have been self-defense as the Petitioner at that point had become the aggressor. Even if the victim was coming toward the Petitioner, he made no threat to him. Agent Perkinson testified he saw no signs of a fight in the Seckinger residence. There was neither overturned furniture, nor items knocked off the tables. (Tr. II 88). The only injuries which Agent Perkinson observed on the Petitioner were bruises on his right and left biceps and on his stomach. He did not see any cuts or scratches. (Tr. II 102). Petitioner told Agent Perkinson that the bruises on his stomach were not related to the fight. (Tr. II 119).

There was conflicting evidence about the violent tendencies of the victim when he had been drinking alcohol. Elizabeth Kilcrease testified she had known the victim for fourteen years and on two occasions after he had been drinking, he acted in a violent manner toward her and the Petitioner. (Tr. II 153) She also testified she had never seen the victim hit the Petitioner, nor had he ever hit her. (Tr. II 155). Donald Taylor testified he had known Kevin Deatherage since they were children and Kevin was "laid back and happy" when he was drinking alcohol. (Tr. II 162-164).

There was other evidence indicating the killing was not in self-defense. Petitioner told Agent Perkinson he got the knife to scare Kevin Deatherage. (Tr. II 98). If the Petitioner reasonably believed the victim was going to kill him or do imminent bodily harm to him, he would not have wanted to just scare him. Moreover, by the time Petitioner got the knife, Kevin Deatherage had retreated from the fight and was in the living room by the front door. Petitioner had no reason at that point to arm himself in self-defense. Dr. Jeffrey Gofton testified the victim's wound was four inches deep and would have required a certain amount of force to penetrate the victim's body a depth of four inches. (Tr. II 32) Dr. Gofton also testified the victim's wound went at an angle through the victim's body on the upper left side toward the center of his body. (Tr. II 30). Clearly, if the defendant intended only to "scare" Mr. Deatherage, a stab wound to the chest was excessive. Kevin Deatherage's body was found on the floor by the front door. (Tr.I 137). This went against the testimony of Mr. Seckinger and the statement of the Petitioner to Agent Perkinson that the victim was coming into the living room toward the Petitioner at the time the Petitioner killed him. Both Mr. Seckinger and the Petitioner initially told

Officer Walling that Kevin Deatherage had come back from the store with the stab wound. (Tr. I 154). This indicated some consciousness of guilt on the part of the Petitioner and some recognition of the Petitioner's guilt by Mr. Seckinger. After careful review the court determines there was sufficient evidence under the standard enumerated in <u>Jackson v. Virginia</u> to find the Petitioner did not act in self-defense.

## II. State Law Issues

Petitioner claims in Ground II the trial court improperly admitted his pen packet. In Ground III he claims his sentence is excessive. He further claims in Ground IV the trial court improperly responded to a jury question during deliberations. In Ground V he claims the trial court erred in allowing a witness to testify. Because claims involving admissibility of evidence, response to jury questions during deliberations and length of sentence are matters of state law, they present no questions of federal law cognizable in a habeas proceeding. The AEDPA provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution of laws or treaties of the United States. <u>Engle v. Issac</u>, 456 U.S. 107, 119 (1982).

Pursuant to Section 2254 (a) the power of a federal habeas corpus court is expressly limited to a violation of federal law; questions of state law are not cognizable issues. <u>Ellis v. Hargett</u>, 302 F.3d 1182, 1189 (10th Cir. 2002). The court will take each issue in turn.

## A.  Evidentiary Issues

Petitioner claims the admission of his pen packet was improper in that extraneous information was contained therein which he claims was prejudicial.  The Oklahoma Court of Criminal Appeals has held that introduction of certified copies of judgments and sentence documents is the appropriate method by which to prove  prior convictions. <u>Sanders v. State</u>, 706 P.2d 909, 911 (Okla Crim. App. 1985).  There is no requirement that information contained in the judgment and sentence documents be redacted. <u>Rosteck v. State</u>, 749 P.2d 556, 558 (Okla. Crim. App. 1988)(holding admission of a judgment and sentence showing the defendant's previous conviction did not prejudice the defendant despite the fact the judgment and sentence also showed the dismissal of an unspecified second count) and <u>Stinson v. State</u>, 739 P.2d 541, 542 (Okla. Crim. App. 1987) (holding the admission of a judgment and sentence showing the defendant's previous conviction for manslaughter did not prejudice the defendant due to the fact it also showed he was originally charged with murder.)  There was ample evidence to show Petitioner stabbed the victim after the victim had retreated from the fight and Petitioner was capable of extreme violence. Based upon the record, the Oklahoma Court of Criminal Appeals denied Petitioner relief on this claim.

Also, Petitioner raises a claim regarding the admission of the pen packet evidence which he did not raise on direct appeal to the Oklahoma Court of Criminal Appeals. When he raised it in his post-conviction application, the trial court found it procedurally barred and the Oklahoma Court of Criminal Appeals affirmed that decision.  Specifically, he asserts the evidence presented regarding his four prior convictions failed to show he

was represented by counsel or had waived his right to counsel and was therefore improperly admitted. Because the Oklahoma Court of Criminal Appeals correctly applied a procedural bar to Petitioner's claim, habeas relief must be denied thereon.

In Coleman v. Thompson, 501 U.S. 722, 750 (1991), the Supreme Court explicitly held that federal habeas review may be procedurally barred where a Petitioner defaults his federal claims in state court pursuant to an independent and adequate state procedural rule. A state court finding of procedural default is "independent" if it is separate and distinct from federal law. Maes v. Thomas, 46 F.3d 979, 985 (10ᵗʰ Cir. 1995). A state's procedural default rule is "adequate" if it is firmly established, regularly followed and evenly applied. Messer v. Roberts, 74 F.3d 1009, 1015 (10ᵗʰ Cir. 1996). Petitioner's claim regarding the failure of his prior convictions to show he was represented by counsel or waived that right, was procedurally defaulted by the Oklahoma Court of Criminal Appeals pursuant to 22 O.S. Sec. 1086 because Petitioner failed to present it in his direct appeal. It is clear the Oklahoma Court of Criminal Appeals has consistently enforced the mandate of Section 1086. In Steele v. Young, 11 F.3d 1518 (10ᵗʰ Cir. 1993), the Tenth Circuit Court of Appeals has addressed the adequacy of Section 1086 of Oklahoma's Post-Conviction Relief Act and held:

> Furthermore, it has been stated clearly that section 1086 "strictly" prohibits raising issues that could have been raised before, even issues involving fundamental, constitutional rights. Johnson v. State, 823 P.2d 370,372 (Okla. Crim. App. 1991)(post-conviction relief "strictly limited" to those claims which could not have been raised on direct appeal, and claims for which the factual bases were available in an earlier proceeding are procedurally barred); Jones v. State, 704 P.2d 1138, 1140 (Okla. Crim. App.

> 1985)(rejecting argument that constitutional issues are
> not subject to section 1086 default). Thus, the
> Oklahoma Court of Criminal Appeals' holding rested on
> an adequate, as well as independent, state ground. <u>Id</u>.
> at 1522.

The court finds Oklahoma's application of Section 1086 is
well established and routinely applied.  Moreover, it is a state
procedural bar which is not only independent but adequate as
well.  As a result, this court is barred from reviewing it.

Erroneous evidentiary rulings are not grounds for federal
habeas relief unless the rulings render the state proceedings so
fundamentally unfair as to violate due process.  <u>Williamson v.
Ward</u>, 110 F.3d 1508, 1522-23 (10th Cir. 1997).  Even in instances
when a state court properly applies a state procedural bar, the
Supreme Court in <u>Coleman</u> also held that a federal court may
nevertheless entertain a habeas petition if a Petitioner can show
cause for his default as well as actual prejudice or show that a
fundamental miscarriage of justice will result from the court's
failure to consider his claims. <u>Coleman</u>, 501 U.S. 722, 750
(1991).  In order to demonstrate "cause" for failing to comply
with a state procedural rule, a Petitioner must ordinarily show
that "some objective factor external to the defense impeded
counsel's efforts to comply with the State's procedural rule."
<u>Coleman</u> 501 U.S. 722, 753 (1991).

Petitioner asserts no cause for failing to raise this claim
on direct appeal.  Petitioner has made no allegations regarding
this exception.  The Supreme Court has determined that to meet
this exception, a Petitioner must demonstrates that "it is more
likely than not that no reasonable juror would have convicted
him..." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).  "To be

credible, such a claim requires Petitioner to support his allegations of constitutional error with new reliable evidence whether it be exculpatory scientific evidence, trustworthy eyewitnesses accounts, or critical physical evidence-that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324. Thus, in considering this new evidence the court must look not only to the evidence itself but to the source of the evidence. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. The court has emphasized that to satisfy this standard, a movant's case must be "truly extraordinary". <u>Schlup</u>, 513 U.S. at 327.

In the case at bar, Petitioner has not come forward with any new evidence demonstrating his innocence. To this cause, all that Petitioner apparently argues is this alleged error led to his conviction. Such contention does not present a colorable claim of innocence. It has been previously determined by this court that the jury's verdict is supported by sufficient evidence. Under these circumstances, Petitioner cannot meet the fundamental miscarriage exception to overcome the imposition of a procedural bar to his claim that the pen packet was improperly admitted. Based upon the foregoing, this court must apply a procedural bar to the claim here.

Petitioner also claims the trial court improperly allowed a witness to testify on behalf of the State. Specifically, he claims that although the State endorsed Stacy Morton as a witness in its discovery materials, she was not on the list provided to the trial court at the beginning of trial. This list was supposed to list all witnesses who would be called by the State to testify. The jury was not voir dired as to whether they knew her or not. Petitioner makes no allegations how this prejudiced

him.  A review of her testimony demonstrates that there is no
possibility that Petitioner was prejudiced by it.

Ms. Morton's testimony was very brief and primarily
consisted of her relating the treatment she administered to Mr.
Deatherage in the ambulance. (Tr. II 67-68).  She further
testified that at the time she began treatment of Mr. Deatherage
he was in a heart rhythm which was incompatible with life. (Tr.
II 68).  Even if a juror had been related to or acquainted with
Ms. Morton it does not appear that her testimony would have
affected the jury's verdict in any way.  Thus, it appears the
Petitioner suffered no prejudice.  Based upon this evidence, the
Oklahoma Court of Criminal Appeals denied this claim.  The
Oklahoma Court of Criminal Appeals found that no prejudice
occurred.  Petitioner's cannot support a finding he was denied a
fundamentally fair trial because of the admission of this
evidence and no due process violation occurred.  Therefore, this
claim is also denied.

## B.  Excessive Sentence

Petitioner complains that his sentence was excessive.
Respondent correctly asserts this claim is not a proper issue for
federal habeas corpus, because sentencing is a matter of state
law.  Shafer v. Stratton, 906 F.2d 506, 510 (10th Cir.), cert.
denied, 498 U.S. 961 (1990). In United States v. O'Driscoll, 761
F.2d 589, 599 (10th Cir. 1985) (citations omitted), cert. denied,
475 U.S. 1020 (1986), the court stated:

> The Eighth Amendment's prohibition against
> imposition of cruel and unusual punishment
> requires that the sentence cannot be
> disproportionate to the severity of the crime or

> involve unnecessary infliction of pain. Again,
> the guiding rule is that the fixing of penalties
> for crimes is a legislative function, and the
> determination of what constitutes adequate
> punishment is left to the trial court's
> discretion; and if the sentence is within
> statutory limits, the appellate court will not
> regard it as cruel and unusual or excessive.

See also <u>Gaines v. Hess</u>, 662 F.2d 1364, 1370 (10th Cir. 1981).

Petitioner does not argue his sentence is beyond the minimum

allowed but rather argues it is excessive. Because Petitioner's

sentence was not outside the statutory limits, habeas relief is

not warranted.

### C. Improper response to Jury Question

Petitioner alleges the trial court improperly responded to a

question from the jury during deliberations. The Tenth Circuit

holds that claims regarding a trial court's response to a jury's

question during its deliberations are matters of state law, not

cognizable on habeas review. <u>Garrion v. Saffle</u>, 5 Fed. Appx.

823, 825 (10th Cir. February 27, 2001). A review of the record

shows that Petitioner's trial was not rendered fundamentally

unfair by the trial court's response to the question posed by the

jury herein. The jury posed the following question to the trial

court:

> If you can't agree on murder one-you must charge the
> defendant with the lessor charge. If you believe none
> of the circumstance of any offense you much find him
> not guilty. Would the charge be manslaughter since we
> all agree he committed the act but yet we can't agree
> whether to be intentional or not.

The court responded with the following answer: "Please

review Instruction No. 36 again." The court finds Petitioner was

not denied a fundamentally unfair trial by the answer given by
the trial court to the jury's question and no due process
violation occurred.  Thus, this claim must be denied.

## III.  Ineffective Assistance of Trial Counsel Claim

Petitioner alleges in Ground II that his trial counsel was
ineffective for failing to object to the introduction of the pen
packet into evidence and for failing to object to the trial
court's response to the jury's question.  To determine the
adequacy of trial counsel's performance, courts must observe the
constitutional standards set forth by the Supreme Court in
Strickland v. Washington, 466 U.S. 668, 686 (1984).  To pass the
scrutiny of appellate courts, an attorney's performance must be
reasonably effective.  Strickland at 687-688.  A strong
presumption exists that counsel's services were "adequate" and
"made with reasonable professional judgment." Id. at 690.

In Strickland v. Washington, 466 U.S. 668 (1984), the United
States Supreme Court set forth the two-part test for determining
the validity of a habeas Petitioner's claim of ineffective
assistance of counsel.  The test requires a showing that (1)
"counsel's performance was deficient," and (2) "the deficient
performance prejudiced the defense." Id. at 687.  The Strickland
test also applies to appellate counsel.

Petitioner has failed to submit any evidence that trial
counsel's performance was deficient.  Even if the court
would have found a deficient performance, Petitioner would
have to establish actual prejudice to his case. Without
expressing an opinion on whether counsel's performance was
deficient, the court finds it is "easier to dispose of an

ineffectiveness claim for lack of prejudice than to
determine whether the alleged errors were legally
deficient." Davis v. Executive Director of Dep't of
Corrections, 100 F.3d 750, 760 (10th Cir. 1996), cert.
denied, 520 U.S. 1215 (1997) (quoting United States v.
Haddock, 12 F.3d 950, 955 (10th Cir. 1993)). "To establish
prejudice under Strickland, Petitioner must show there
exists 'a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would
have been different. A reasonable probability is a
probability sufficient to undermine confidence in the
outcome.'" Davis at 760. (quoting Strickland, 466 U.S. at
694). There is absolutely no evidence of any actual
prejudice to the Petitioner in the course of his case.
Therefore, his ineffective assistance of trial counsel must
also fail.

IV.  Procedural Bar

In Ground VI of his Petition, Petitioner raises the
claims that the jury should have been instructed on heat of
passion or adequate provocation and on the 85% rule
concerning eligibility for probation. Petitioner alleges in
Proposition II of his brief in support of his Petition that
his counsel was ineffective for failing to identify
additional issues for trial. When Petitioner filed his
direct appeal, he did not raise these claims. Petitioner
raised them subsequently in his application for post-
conviction relief which was denied by the trial court. When
Petitioner appealed the denial of his application for post-
conviction relief, the Oklahoma Court of Criminal Appeals
did not address these claims on the merits because of an

independent and adequate state procedural ruling holding
that all issues not raised on direct appeal which could have
been raised there are waived. 22 O.S. Sec. 1086.  Because
the Oklahoma Court of Criminal Appeals correctly applied the
procedural bar to Petitioner's claims, habeas relief must be
denied on them.

In Coleman v. Thompson, 501 U.S 722, 750 (1991), the
Supreme Court held federal habeas review may be procedurally
barred where a Petitioner defaults his federal claims in
state court pursuant to an independent and adequate state
procedural rule. A state court finding of procedural default
is "independent" if it is separate and distinct from federal
law. Maes v. Thomas, 46 F.3d 979, 985 (10th. Cir. 1995).  A
state's procedural default rule is "adequate" if it is
firmly established regularly followed and evenly applied.
Messer v. Roberts, 74 F.3d 1009, 1015 (10th Cir. 1996).

The claims raised in Petitioner's Ground VI and the
ineffective assistance of counsel claim for failure to
identify additional issues for trial were procedurally
defaulted by the Oklahoma Court of Criminal Appeals pursuant
to 22 O.S. Sec. 1086 because Petitioner failed to present
them in his direct appeal.  Section 1086 is the section
which specifically sets forth the rule that all claims
available must be raised on direct appeal and post-
conviction is not a procedure for review of defaulted direct
appeals claims.  It is clear the Oklahoma Court of Criminal
Appeals has consistently enforced the mandate of Section
1086. As was stated in Steele v. Young, 11 F. 3d 1518, 1522
(10th Cir. 1993) the Tenth Circuit Court of Appeals has
stated the Oklahoma's application of Section 1086 is well

established and routinely applied. Moreover, it is a state procedural bar which is not only independent but adequate as well. For these reasons, Coleman bars this court's consideration of the claims contained in Petitioner's Ground VI and the ineffective assistance of counsel claim for failure to identify additional issues for trial. Coleman, 501 U.S 722 at 750. Further, Petitioner has been unable to show cause for his failure to raise these claims on direct appeal and he can not show actual prejudice of a miscarriage of justice. Therefore, this claim must fail.

### V. Petitioner's Claim of Ineffective Assistance of Appellate Counsel is Unexhausted.

Petitioner alleges in Ground VI of his Petition that his appellate counsel was ineffective for failing to raise the issue that the jury should have been instructed on the 85% rule. This claim has never been presented to the trial court in post-conviction application or to the Oklahoma Court of Criminal Appeals. Because this claim could have been presented in a second post-conviction application, it would be procedurally barred by the Oklahoma Court of Criminal Appeals pursuant to 22 O.S. Sec. 1080. Accordingly, this court should not consider this claim.

Ordinarily a petition containing unexhausted claims must be dismissed. Parkhurst v. Shillinger, 128 F.3d 1366, 1368 (10th Cir. 1997). However, the Tenth Circuit Court of Appeals has held that dismissal without prejudice is not appropriate if the state court would find the unexhausted claims to be barred on independent and adequate state procedural grounds. Smallwood v. Gibson, 191 F. 3d 1257, 1267 (10th Cir. 1999).

If Petitioner now attempts to return to state court to attempt to raise a federal claim arising out of the state claim raised in Ground VI, that claim would be barred. 22 O.S. Sec. 1080 (all grounds not previously raised may not be the basis for a subsequent application for post-conviction relief.) The Tenth Circuit Court of Appeals has found Oklahoma's bar of claims not raised in an initial application for post-conviction relief to be independent and adequate. <u>Thomas v. Gibson</u>, 218 F.3d 1213, 1221-1222 (10th Cir. 2000); <u>Medlock v. Ward</u>, 200 F.3d 1314, 1323 (10th Cir. 2000); and <u>Smallwood</u> at 1267-69. Accordingly, this Court will not consider this claim. <u>Steele v. Young</u>, 11 F.3d 1518, 1524 (10th Cir. 1993).

This court may consider a habeas petition if a Petitioner can show cause for his default as well as actual prejudice or show that a fundamental miscarriage of justice will result from the court's failure to consider the claims. <u>Coleman</u>, 501 U.S. 722 at 750. Petitioner neither makes an allegation regarding any cause for failing to assert this claim, nor does he allege that he is actually innocent. The court has previously found the jury verdict is supported by significant evidence. Petitioner cannot meet the fundamental miscarriage of justice exception to overcome the imposition of a procedural bar to the ineffective assistance of appellate counsel claims raised in Ground VI. This court must apply a procedural bar to the ineffective assistance of appellate counsel claim. Accordingly, the Petitioner's petition for a writ of habeas corpus is hereby dismissed in its entirety.

**IT IS SO ORDERED** this 6th day of December 2007.


Frank H. Seay
United States District Judge
Eastern District of Oklahoma